Good morning, everyone. You can be seated. People versus Daniel Guerrero, case number 210400. Good morning to all. Again, with the lawyers who are going to argue the case, please represent yourself to the court. When you're making the argument, you could remove the mask. Okay. As to the appellant, do you want to reserve some time for rebuttal? Yes, please. Three minutes. Okay. All right. Let's proceed. May it please the court? I want to ask you a question right off the bat. Sure. You know, you've cited to the literature showing that the human brain in some people continues to develop until the person is in their 20s. Sure. That's correct. However, in the petition here, you know, there was no allegation in respect to this petitioner's mental age. So tell me, what evidence do you have to show that the petitioner's mental age at the time of the murder was younger than his chronological age of 22 years and two months? Right. So the case that's most instructive on this is People v. Savage. And as you know, Savage clearly focused on his background in that petition. And here, Daniel chose to focus on the brain science. But that doesn't mean that his background or facts about his background are not in the record. If we look at the PSI, we see actually that Daniel's background is very similar to the Savage petitioner's background. They not only share the same age, but they actually joined a street gang at around the same time. The Savage petitioner did so at the age of 13. Daniel did so at the age of 14. They both dropped out of high school at around the same time, in the 10th grade, due to their gang involvement. They both attended special education classes while they were in school. And they both engaged in heavy drug use up to the commission of the offense. The PSI tells us that Daniel smoked marijuana on a daily basis up to the time of his incarceration. So as Your Honor is aware, the Savage petitioner, one of the major points in that case is that the Savage petitioner was a drug addict that controlled his behavior. The same is not true to the same extent with Daniel, but certainly smoking marijuana every day since you were a teenager up to the time of your incarceration in your 20s is certainly going to have an effect on your brain. So while there might not be no evidence of that, you're just speculating. That is something that needs to be further developed into record, and that can certainly be done at the second stage. And that's what the second stage is for. At this initial stage. So everybody then should petition just like Mr. Guerrero, even if there's no evidence whatsoever that their brain is any different? Well, there is evidence here in terms of the PSI and the facts about his background. Well, here is his sister. Didn't his sister say he's a real bright kid? Did she specify that at the sentence hearing? Well, so what the brain science tells us is that intellectually, a juvenile, someone 16 or a young adult, is pretty similar to someone who is more mature in their later 20s. He was 22 years and 2 months. Excuse me? 22 years and 2 months. Yeah, 22 years and 2 months. How old was the boy in Savage? He was also 22. I'm not sure about the exact age, but he was 22. So in terms of your intellectual capacity, when you're a juvenile or a young adult, that's going to be similar to someone who is an adult. But where the difference is, is your ability to control your emotions, your ability to make long-term decisions. This is only a test. What about, isn't Savage really the only case reported officially as an opinion that actually let the petition go forward? Yes, that is the only case where a 22-year-old was allowed to advance his petition to the second stage. But remember, at the first stage, the relevant standard is whether the claim is indisputably meritless. So if there is one case that directly supports Daniel's claim, as the case is here, that is sufficient to advance Daniel's claim to the next stage. What about all the other cases, actually, that are individuals who are 25? That's not indicative of that. Don't worry about it. We'll take the chance. Okay, I'm not sure if it's over. Go ahead. Okay. He can't go on forever. Just hang on one second. Okay. Hold your argument for one second. Okay, hopefully we're okay now. I think it's over. Okay. So there are cases where Petitioners aged 22 and up have had their petitions denied at the first stage. That shows, first of all, that there's disagreement among the courts as to where to draw the line. At this stage, the initial post-conviction stage, we're just seeing if his claim has any merit. And given that we have Savage's decision, where a 22-year-old with a very similar background was allowed to advance his petition, that's enough. That's sufficient to advance Daniel's claim to the next stage. Even though aren't there another number of other additional decisions that I think, as Justice Gordon began to point out at the beginning, that there was pleading in those cases, and particularly in Savage, that that individual's brain was different than an adult and more like a juvenile? Well, certainly from, first of all, from Daniel's pleadings, it can be implied that's what he's arguing. He's citing studies that have found that the brain doesn't. I know he's arguing that. Right. I'm talking about decisions that say that there has to be some pleading, some factual statement that this person's brain is like that of an undeveloped, fully mature adult.  fully mature adult. Sure. Well, I mean, that can be implied also from the facts of Daniel's background that are in the record. This Court can consider those facts to determine whether Daniel's post-conviction claim or his proportionate felonies claim has merit. And, again, as I mentioned before, those facts show that he's very similar to the Savage defendant. But what case says that we could imply those things? What case says we could imply that? Well, I mean, those are part of the appellate record. I can't think of the case's name, but this Court and other courts regularly apply things that are in the record to support an argument or a decision, and that is appropriate here. It's in the PSI. It's very – the PSI outlines Daniel's history. It's a little bit different in that here's somebody who basically either killed or was in the process of killing somebody with a baseball bat. Right. And then two years later, he's out there trafficking guns. I mean, if we let somebody like this out, maybe in a week he'll kill somebody else. I mean, where's the potential for rehabilitation? Well, with Daniel, those – there's – Daniel's criminal record is certainly not the best, but it's also not the worst. I think that gunrunning charge and – It's not the worst, but it might be in the top three. Well, I think if we compare Daniel's case to the Savage case, then Savage committed a robbery, and he planned this robbery. He ended up – it ended up being a chaotic situation where he shot someone and then tried to shoot another person. I think this offense – This was a senseless killing. This was – A killing because somebody wore a red shirt. This was certainly a senseless killing, but it doesn't mean that juvenile maturity was not a factor. If we look at the facts of this case, Daniel and members of his gang were partying throughout the night when someone came to the party and yelled, there's a rival gang member, or there's a flake in the neighborhood. And then Daniel and members of his gang, they, as a group, went to find this person and attacked him. There was no plan to commit this offense. There was – there was a – they did so on a whim. They did so impulsively. The defendant was the ringleader. Well, that's what the court – the trial judge concluded. But what the evidence shows us is that Daniel was the person to strike the victim first with the baseball bat. But there's no testimony or no prior inconsistent statement that establishes that Daniel was directing other members of his gang to commit this offense, or that he was somehow the one – the person who initiated the idea to go find this rival gang member. This was a group effort not to excuse Daniel's behavior, but it shows that peer pressure was a factor and that impulsivity were a factor, and those are hallmarks of juvenile immaturity. Those are certainly present in this case and were drivers of Daniel's actions on that tragic night. Again, not to say that they excuse Daniel's actions, but they explain what – how he was more like a juvenile. So – and if we look at some of the other cases where the Petitioners were denied relief, where 22-year-olds or 23-year-olds were denied relief, denied essentially the opportunity to advance their claim to the second stage, you have facts that show that these Petitioners exhibited traits that are more associated with adult criminality. For example, in People v. Williams, a case cited in State's response brief, the defendant committed a planned armed robbery where he murdered – where five people were murdered and where he shot one of – personally shot one of the victims because she wouldn't stop screaming. In People v. Sons, you had a case where the defendant robbed a payday loan store and murdered the clerk execution cell in order to eliminate any possible witnesses. So – What about – what about the Supreme Court, Illinois Supreme Court's recent decision in Dorsey where they suggested that their decision in Holman – Right. – which is really what led to these younger adults to challenge a sentence under the proportionality clause? Right. What about their statement that they questioned whether their own decision in Holman still has viability in light of the U.S. Supreme Court's decision in Jones? Okay. So, well, first of all, Dorsey didn't explicitly overrule Holman. No, it didn't. It questioned its viability. Right. So Holman still remains the law of the land in regards to the requirement that judges must consider the juvenile intended circumstance or the relevant factors that are – must be considered before sentencing a juvenile. But with Jones and Mississippi, you had – the ruling of that case was that the Court doesn't have to make explicit finding that – of permanent corruption, essentially, before sentencing someone or a juvenile to a discretionary life sentence. That protection applies at the federal level, at the U.S. Supreme Court. That doesn't mean that Illinois does not provide greater protections. Clearly, there have been cases that have found that the Illinois proportionality clause does provide greater protections. That's the whole reason why young adults such as Daniel, such as the defendant in House, such as the defendant in Savage, were allowed to raise their claims challenging their sentences. How does House go back to make that change? Right. There were no – there weren't specific backs like in this case. I mean, you're saying they're implied, but House was allowed to be returned to the trial court. Correct. That's correct. And, again, that claim is actually very similar to the claim that Daniel was raising. House focused, like Daniel did, on the brain science, saying that I, as someone in my early or early 20s or late teens, have an underdeveloped brain, and I'm not able to make decisions in the same way that an adult is able to make decisions. I did – What then will be – is there to be a line? What about all the legislative enactments following House that pretty much changed the landscape sentencing-wise for young adults between the ages of 18 and 20? Correct. So our legislature has enacted these considerations up to the age of 21, I believe. Yes, 21. 18 through anyone under 21. After 21, the door seems to have been shut. Right. So just because the door is shut there right now does not mean that the law can't change in the future. In 2011, before Miller was decided, there was no – or, I mean, juveniles could still be sentenced to mandatory life in prison, and there was no notion that 40 years in prison was equivalent to a life sentence. So the law can change, and we're seeing a change in other states. In California, for example, parole considerations that were generally reserved for juveniles have been extended to defendants up to the age of 25. And the same is true in Washington, D.C. Yes, but in California, it's a statutory state. Everything is by statute. Right. So I'm just trying to – It's not by statute. It's by case decision and statutes, you see. Right. So you can't compare California with any other state. It's a total statutory state. It has no stare decisis whatsoever. Right. Right. I'm just pointing that out to highlight the fact that the legislatures are recognizing the brain science. They are recognizing that defendants up to the age of their mid-20s, 24, 25, that they are not – that they are more like children or they're more like juveniles in terms of their decision-making, especially when they are in these emotionally charged situations, such as Daniel's case after a night of partying, whether they can make a rational decision. The science says that they are less able to do so and for that reason that they are less culpable. So I think the fact that California passed that legislation just shows that there's movement in the law. And certainly, Illinois could follow that – follow California down the line, not saying that it's happened yet. But bringing this back to where we're at right now in the post-conviction stage, at the first stage, we're just determining whether Daniel's claim has any merit, whether it is based on an indisputably meritless legal theory. And certainly, it is not given that we have the decision from House where an identical claim was essentially raised regarding the brain science. And given the decision from Savage – He wasn't 22. But the – He wasn't close. He was 19, the House defendant. Right. The Savage defendant was 22, however, and given – There was a lookout, wasn't he? The House defendant? Yeah. That's correct. But the Savage defendant was the principal and he fired shots that resulted in murder. Whereas – and also, he did so in a more planned manner. I mean, Daniel did so very impulsively with other members of his gang. So just, again, we're just deciding here whether Daniel's claim has any merit. And certainly, if you look at the case law with House and Savage, I mean, both of those cases, when considered together, certainly support Daniel's claim. They certainly show that his claim is – at least has merit, arguable merit. And at that point – at this point, that's all we're deciding. At the next stage, we can further develop the record and fill in the blanks to see how the brain science is personally applicable to Daniel. Perhaps – That's the difference. There's no blanks filled in here. And that would be very difficult for Daniel to do. I mean, he's incarcerated in prison. How is he supposed to get in contact with a brain specialist or a psychologist or any sort of professional that can provide him with that information? That's why we have such a low standard at the first stage, to ensure that how are you going to do it, if we grant your request, how are you going to do it? He's still going to be in prison. He'll still be in prison, but he'll have an attorney. And that attorney can certainly go out and investigate and talk to professionals, and they begin an interview with Daniel. We also need to know more about Daniel's past. Although we have a rough outline from the PSI, for instance, we don't know why he was in special education classes when he was in school. Perhaps he has a learning disability. The record's not clear, but those things can be more colored in, if you will, at the second stage. And again, having an attorney makes a big difference. You have someone that can investigate on your behalf, someone who can talk to these brain professionals to determine Daniel's actual brain age, to determine whether his claim can, of course, move to the next stage, to the evidentiary hearing. But again, denying him relief here doesn't make sense in light of what we have, what the case law says. There's direct case law support for the claim. And the relevant standard here is whether Daniel's claim is indisputably meritless. Certainly it is not given that we have. You're past your time. Why don't you save your last three minutes? Oh, sure, sure. Okay. Thank you, Your Honors. Thank you. I appreciate it. Good morning, Your Honors. Again, I am Assistant State's Attorney Harina Megani-Wakely, representing the people. The summary dismissal in this case was proper and should be affirmed. Defendant was 22 years old when he committed this crime. This Court has consistently held, as well as other appellate panels, that Miller protections do not extend to defendants who are 21 and over. In fact, Morris, Suggs, Williams, cases that have so decided, were all summary dismissals just like this case. Defendant tries to factually distinguish these cases, but factual distinctions are not the crux of those cases. The crux is the underlying premise that was the movement for all of those holdings, the fact that the defendant was over the age of 21 or over in those cases. Defendant cites numerous cases, such as House, a 19-year-old. The other cases, 18-year-olds. None other than Savage dealt with a defendant who was 21 age or over. And Savage, as many courts have called it, is an outlier case and very unique in its facts. And those facts simply do not exist in this case. The defendant in Savage provided compelling explanation of how his drug addiction made him like a juvenile, how his drug addiction impacted the crime that he committed. And he supported this claim with documentation regarding a severe drug addiction. The Court also found fatal to dismissing at the summary stage the fact that there was no indication before the sentencing court in the record that this addiction that was documented was actually considered at sentencing. Based on those, the pleading as well as the support that the record had and the documentation, this Court found that there was sufficient to survive summary dismissal. Nothing like that exists in this case. Defendant alleges no facts particular to him that make him a juvenile. He cites only general studies, and he does not even address in his petition how those studies apply to him, other than the fact that he falls within the age group that those studies dealt with. Yes, defendant smoked marijuana, but there was no showing as to how this affected his behavior. And, in fact, he's made no such claim that it affected his behavior in this particular case. There was a learning disability. Again, he didn't even plead how it affected his behavior in this case. While the initial stage is a very low burden for the defendant, nevertheless, there is a burden. And that burden doesn't necessarily turn on whether he has legal support, but it turns also on whether he provides in his pleadings any factual details to support his claim. And here, defendant has not done that. And that is critical in distinguishing this case from Savage. The record also totally negates any contention that he was akin to a juvenile. I mean, the record shows that he went to the 10th grade. He voluntarily opted to do no more schooling. He held down a job from the time he was 16 while he was a gang member and even got promoted as a manager. He helped his sister with the kids. He had a good, healthy relationship with his family. Even the actions that he committed in this senseless, brutal murder was not like a juvenile. This was senseless. There was no reason other than the fact that he didn't like the red shirt that the victim was wearing. He initiated by walking over. Yes, there was a group dynamic involved, but defendant was in charge of this group. He was the leader. He was not the patsy. He coordinated the attack. He struck the first blow with the bat, causing the victim to fall to the ground and enabling his fellow cohorts then to join in on the action. Furthermore, gang membership alone is not enough. And it did not prevent him from being a responsible person and not impetuous. I mean, again, he went to school. He held a job. He helped his sister. He was social with his family. And more importantly, the impetuous claim that because I was a gang member I did this, I mean, is belied by his continued association with the gang after the murder and picking up yet another case, gun running, with this group. I mean, he voluntarily chose to attach himself to the group, and it wasn't the group that made him do anything. Furthermore, when one looks at the record, it also shows, unlike in Savage, that the trial court considered all factors relevant at sentencing, his youth, family situation, work history, education, leadership role in the murder, prior criminal activity, and prospects for rehabilitation. I mean, the arguable basis in law, in fact, has simply not been met by the defendant in this case. And for those reasons, as well as the other reasons outlined in our brief, we would ask respectfully that this court affirm the summary dismissal. Thank you. May I have your vote? May I please record? So, first of all, with the case is not factually distinguishing from Savage, and that age being the only factor. That's simply not true. In Williams, Suggs, and Morris, the court went out of its way to say why these cases were different from Savage. And the main point was the nature of the crime itself, the cold, calculated, cruel manner in which these crimes were committed in Williams, Suggs, and Morris  This wasn't a cold, cruel, savage beating, so to speak? It wasn't. Beginning with a baseball bat and then egging others on, and a knife was then used. So this person was beaten and stabbed to death. And you're not calling this a mean, sort of intensive death? A horrible crime? I'm not saying it's not a horrible crime or that it wasn't a violent crime. What I'm saying is that the nature of the crime was an impulsive act, where they decided to do this on a whim after a night of partying, which is very different from what happened in Williams and Suggs, where they were planning to do it. What was the testimony about a night of partying? So there were several witnesses who, the main witness is, I forget her name, but she was at one of the girlfriends of one of the gang members, and she said that they were partying at a gang member's house when someone came to the house and yelled, Flake, and that caused Daniel and two other gang members to leave the party, and that's when the offense occurred. But he had a baseball bat. He wasn't playing baseball. I'm not sure why he had the baseball bat, but, again, the whole point here is there was no plan to commit this offense. He used the baseball bat as his instrument to kill. That's correct, Your Honor, but, again, the whole point here is that there was no plan to commit this offense. What was the word you mentioned that got them to leave the party? What was it? It was called Flake. Flake. It means rival gang member. Right, right. I know what it means. So when you're saying that it's not planned or anything, why isn't it planned when the name of a rival gang is announced and then immediately the defendant and the others left? Well, that's an impulsive act. I mean, they did not come to this party with the idea that they were going to harm someone. They were just doing things that young adults and juveniles do. They were partying, probably consuming drugs and alcohol. If what you say is true, then why would he have a baseball bat? He is a member of a gang, so having a weapon like that, I'm not sure why he had a baseball bat, to be frank. To hurt somebody. Perhaps, but, you know, being in a gang is generally obviously considered an aggravating factor, but it also shows juvenile immaturity. Remember, Daniel joined this gang at the age of 14 in a neighborhood where gangs are very common, just like the savage defendant. They joined gangs as teenagers, so that's just what teenage boys do in those neighborhoods. So that, of course, is not a good thing, but it also shows that, you know, they were not fully grown up and they were participating in this gang life, which shows immaturity from our perspective. So just because he participated in gang life, that's certainly something that's aggravating, but also it shows juvenile immaturity to be engaging in this sort of activity. Again, I'm not trying to say that Daniel's age excuses his actions, but it certainly explains why he acted the way he did. Are you trying to tell us that, you know, you have to be a juvenile to be in a gang? I mean, aren't there 38- and 39-year-olds and 40-year-olds in the gang? I'm sure there are gang members that are that old, and they would be more culpable because they are adults and they're staying in the gang life. But Daniel, at 22, again, the brain science tells us that someone at the age of 22 is not fully mature. So there is less culpability here. And, again, to completely litigate this issue at this stage, the first stage, where the standard is very low and where Daniel needs only to show that his claim has arguable merit, that it's not indisputably meritless, that's not appropriate here. There's no need to weigh any of the facts. We just need to show – we just need to see if Daniel's claim has some legal basis, and it certainly does, given that we have the decision from Savage. Again, I just want to compare the facts of that offense to this offense. That also was a cruel offense in every manner that Daniel's offense was a cruel offense. The Savage Petitioner shot someone, and he went there with a gun with the intent to rob them. And then when the – when the – when his plan went awry, he decided to kill – kill the victim. So the facts of all these cases, all these proportionate penalties claims, are going to involve murder, sometimes vicious murders. But the point here is, if we look at the facts of Daniel's case, how he acted or why he decided to act, again, there was no plan. He did not go to this party with the plan to commit the attack. It was an impulsive act. And certainly, just because he was considered the ringleader doesn't mean that peer pressure wasn't a factor. He committed this crime with other members of his gang. And again, I just want to point out that the only evidence that the trial judge relied on to say that he was the leader of the pack is the fact that he initiated the attack. There was no testimony. There was no prior inconsistent statements in that case that established that it was Daniel's idea to commit the offense or that it originated with him. So – How long has Daniel been in prison? Daniel's been in prison for about – he's been incarcerated about five, six years now. So – Is there any evidence that he's been a violent prisoner? I'm not aware of any sort of, I guess, demerits or anything that he received in prison. But the record does not tell us how he's been behaving in prison. But there's no reason to think that he's been a troublemaker or he hasn't been maturing. In any event, I think – this is from Holman – that when we consider whether juvenile characteristics, we don't consider what happened after the offense. We have to consider what happened before. So in that case, what happened after certainly can bolster a claim, but it shouldn't be the basis for denying a claim is what I'm trying to say. Well, you think about what you just said, that you don't consider what happened later. And you're arguing brain size. And brain size isn't the whole picture ever, is it? It's not just the size of your brain. It's more than the size of your brain. But it's maturity. So when does a person reach maturity? He's been in prison for five years. He's not reached maturity yet. Is he going to be 80 before he reaches maturity? When is he going to reach maturity? Well, he's going to reach maturity at the age of 24 or 25, according to the science. Well, he's that already. Excuse me? He's that already, isn't he? Yeah, but at the time of the offense, he was not 24 or 25. Well, I understand that. But if he's reached maturity, you'd have evidence of that, that he's a model prisoner, something to put in a petition. Nothing's in your petition. Those things are not part of the record. And if he had, you know, I'm sure if those things were, I mean, if he could put those things in or if he knew to put those things in, he would have. Again, these are things that can be developed at the second stage. That's a perfect thing to develop at the second stage, how he's been behaving in prison, to see if he is actually maturing to bolster his claim. At the first stage, again, we're not deciding, we're not litigating this claim to its end. Daniel does not need to show that he will prevail on the claim. He only needs to show that his claim is not indisputably meritless, and that's the standard that we're dealing with here. We're not seeing whether, oh, he's going to finally get a new sentencing hearing. We don't have to decide that here. We only need to decide whether his claim has arguable merit, and it certainly does, given that what we know about his background, what we know about what Savage tells us, his similarities between the Savage petitioner, given that they both grew up in neighborhoods that were infested with gangs, that they both dropped out of school because of their gang life, that they both abused drugs. Certainly, Savage did not. Different drugs. They take different drugs. One's marijuana and the other's cocaine or something like that. Right, right. So different drugs. I'm not a scientist. I don't know what effects taking marijuana or taking cocaine every day will have on the brain, but certainly that doesn't seem like something that will be helpful in terms of developing your brain. So, again. It doesn't matter that the Savage sentence was really close to what we would call mandatory life in prison. That was a straight-up 85 years, wasn't it? Right, right. No good time. Right. Did you get much closer to mandatory life than that? Right. So 85. What is this? This is 45 years. So 45 is also above what Buffer said is a life sentence. So either way, they're both life sentences, and if they were juveniles, those can't be imposed. I think there's also a trend away from the idea that 45 years, that it does give an opportunity for rehabilitation. 85 years certainly does not. If you compare Savage, where is the chance for rehabilitation when he's going to die in prison after 85? I mean, there aren't too many people that even live to 85. Sure, sure. Okay? But this is a 45-year sentence. Does this matter at all or not? It definitely matters because Buffer says that. I know. That's what I'm saying to you. You're saying it doesn't matter whether it's 45 or 85 when, in fact, the reality is that one truly is a de facto life. Now, Buffer says that 40 is for a juvenile. For a juvenile. But in reality, 45, if there's life at the end of the tunnel, there's absolutely none if you're 22 and you're sentenced to 85 years in prison. You don't have a chance for rehabilitation because you're never going to get out. Right. I mean, there's no question that 85 years is much longer than 45 years, but certainly that's what the law says right now. Buffer says it's 40 years, and whatever. 45 years is still a very long time. I think Daniel will be. Well, I'm not saying it isn't. It certainly is. Believe me. If any of us were asked to do 45, I think we'd consider it a very, very long time and the end of our life. So I'm not saying that. But I'm saying there's a chance for getting out at 45, but I don't see you ever getting out at 85 when you're 22 years old. That's 107. Forget it. You're done. You'll never see the light of day. Right. And, again, Even if you were rehabilitated in prison, it won't do you any good when you're sentenced to 85. Right. And I just want to reemphasize that. 40 years is still considered a life sentence. For juveniles. For juveniles, but all these young adult claims, they're asking to be treated as juveniles. So if these claims go forward and they're treated as juveniles, then 40 years will be considered a life sentence for them as well. So, again, Daniel only needs to show that his claim is not indisputably meritless. That's the whole point here. And on the basis that we have Savage and House that support his claim, directly support his claim, we would ask that Daniel's petition be advanced to the second stage on that basis. If you have no other questions, that's all I have. Thank you. Thank you. Thank you very much. Thank you very much for a very good argument. And we'll take that case under consideration. You'll have a decision shortly.